on the docket today, and we call the first case, number 18-30925, D&G Holdings v. Azar, Mr. Shepard. Good morning. Good morning, Your Honor. May it please the Court, the District Court in this case erred in two primary respects. The first is that the District Court believed that the issue that was presented below was quote, akin to an initial determination, which is a term of art under the Medicare program that indicates that it's an appealable issue and has to go through the administrative process. The second error, the key point that the Court got wrong, is that the Court below believed that her jurisdiction was limited in such an appeal to only those issues that were actually decided by the Medicare Appeals Council. So if you read the Court's opinion below, she makes statements such as these, quote, the Court finds it illogical that it would be asked to review a determination that does not appear to have been before the Appeals Council, end quote. Next quote, the agency has not been given an opportunity to review this decision and correct the alleged errors, next quote. Even if not classified as an initial determination, the Court is not convinced that the issue has been exhausted and finds D&G's reliance on Illinois' counsel unavailing as applied in this case. So the Court is laboring under the mistaken belief that the only issues she has jurisdiction to review on an appeal from a Medicare overpayment case are those actually decided as part of the administrative record. We know from Illinois counsel that that is absolutely incorrect. We made the same argument below that the nursing homes made in Illinois counsel. In Illinois counsel, the nursing homes were not in as good a position as us. In this case, I have a final determination from the secretary overturning the overpayment determination. In Illinois counsel, that was not the case. They jumped the gun and filed suit in federal court without first obtaining a final determination from the secretary. They attempted to justify that jumping of the gun by arguing to the Court that there were certain regulations that would not permit issues in the case to be decided as part of the administrative appeal process and therefore they should be able to go straight to court. The Supreme Court came back and said no, it's the action, the underlying action that has to be funneled through the appeal process, not each and every individual issue. And once that action has been so funneled, then the district court has jurisdiction and the Supreme Court in Illinois counsel went far enough to describe the contours of that jurisdiction and the contours include the ability to take up and to consider both constitutional or statutory issues that the administrative panel or mechanism was unable or didn't have the capacity to decide and also importantly the ability to make a record, to hear evidence and make a factual record if necessary to decide the issue presented. The issue in this case that was presented is very simple. We won by final decision of the Medicare Appeals Council which said that we reverse the overpayment decision. The secretary thereafter was required to repay recouped funds with interest. They have not done so. The same day that we filed our complaint in this case, they did make a payment that we believe is a partial payment. They paid you $1.8 million? That's correct. You think you're entitled to more because more was recouped from you? You're exactly correct, Your Honor. Can I understand this in terms of, so we're here on dismissal for lack of subject matter jurisdiction? That's right. And the relevant statute is 405G? Correct. Okay. So it's a long statute and I've got it here in very small print, but the relevant part of the statute says, any individual after any final decision by the commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount of controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing, et cetera, et cetera, et cetera. That's the statute that you sued in the district court under. That's the source of the jurisdiction. My question is, were you seeking to obtain a review of the decision of the council? Because I thought you, I understood you to say the council was correct. Yes, but that's the, unfortunately, Congress has set up a quite convoluted system, admittedly so. But this is the correct mechanism. For example, my complaint alleges a constitutional violation of the Fifth Amendment. Their keeping of our funds and not repaying them is a problem under the Fifth Amendment. So let's assume that that was the only argument I was making. A literal reading of 405 would say, well, you're not really seeking a review of the decision. In fact, council, you agree with the decision. That's true. But the Supreme Court has explained that once you exhaust the administrative remedy, and that's really the substance of the issue before this court. Once you funnel and exhaust, and you obtain a final decision from the secretary, the Supreme Court has outlined for us, you're not going to find it in the statute or in the regulations. You're going to have to go to the Supreme Court interpretation, and the Supreme Court said in Illinois Council that once that underlying action makes it all the way through the multi-year process, which is taking four, five, six years now, once you get there, okay, now the court has jurisdiction to consider these collateral issues that were not appropriately considered or couldn't be considered during the administrative appeal process. So Your Honor is correct. If you read the statute, it seems to say that I want you to review the opinion that I agree with where I won 100% below. But we know from Illinois Council that jurisdiction is not so limited. And that's why I said at the beginning that it's very important that Illinois Council, the Supreme Court said that the court not only can consider matters not decided as part of the administrative process, but also has the authority to develop a factual record on appeal. So if they're not just sitting, as this court might sit, solely to hear cases on only the issues, and I'm not talking about a Medicare case now, but only, you know, you typically in the Fifth Circuit don't create your own, you don't typically take evidence and create your own record. This is different. The district court, yes, they're sitting as an appeal court, but they have the jurisdiction to consider those issues that were not decided or couldn't be decided during the administrative process. Well, they could have jurisdiction to do that. The whole question, I think, to echo what Judge Duncan was asking just a second ago, is do they have it under 405G? Because the way the statute looks, certain kinds of claims get channeled through the administrative review process, as you put it in the brief, and I think our court has said it before, the Byzantine, you know, five-level process, which is somewhat amazing that your client was able to navigate through successfully. Labyrinthian. Labyrinthian process. Some claims go through those, right, and have to go through those, and when you get to the end and you're seeking review of the way those claims were adjudicated, then that's a 405G question. But there's a whole other line of cases, and this is my principal question to you, is why aren't you in the second line of cases, Califano and those cases on the second line that say your claim isn't actually a 405G claim, right? You're not actually seeking, you know, an initial determination with respect to benefits under Part A and Subpart B and everything else. I understand your question. The answer is, respectfully, I believe I am under 405G, and I think I have to be under 405G. There's case law out there that indicates that you have to pursue 405G instead of, for example, my fallback position in this case is that I have mandamus jurisdiction, and I have alleged facts that would give me mandamus jurisdiction, and if for some reason I'm wrong, I believe you have to read the Medicare statute with the gloss provided by the Supreme Court. And I understand what you're saying, that if you look strictly at the statute, am I asking the court to change the decision by the Medicare Appeals Council? Of course not. But I am certainly asking for the court to exercise its jurisdiction, which is triggered by the exhaustion, by the final determination by the Medicare Appeals Council. So I understand how the Medicare Appeals Council final decision is a predicate for mandamus. I guess, what would happen if the court disagrees with you that this is a 405G? I notice that the judgment below is a dismissal without prejudice. So I would assume that you would be able to go back to the district court, file a mandamus action, and say, here is the final determination that the overpayment was, I'm sorry, that the recoupment was unlawful. Please repay under 1395DDDF2B. I'm sure the secretary would say that that's untimely, that's why I've asked for the alternate relief. And why would it be untimely? I don't know that it would be, but I'm sure they would make that argument. Clearly, I believe in this case, the secretary has a clear duty. It's not even disputed by the secretary that they made no effort to pay interest in this case. So even if we dispute how much principal is owed, which we certainly do, they admit they haven't paid any interest, which is clearly required by the statute. So I do believe that mandamus jurisdiction, I could have done what Dr. Wolcott did in his case, where he had slightly different facts, though, because in his case, he had a favorable determination by the secretary. And in subsequent claims, he was saying that the secretary wasn't following the decision. Here, the overpayment is tied directly to the underlying action that's up on appeal. In other words, but for this underlying action that I've taken through four or five steps of the appeal process, but for that, the overpayment's tied to that. In other words, and if you read the facts, I mean, I was in the district court twice seeking injunctive relief because of these recoupments. So they're tied to the underlying overpayment determination that was reversed. So that's why I believe I have to go under 405G. If I'm wrong, then I think I have mandamus jurisdiction. But there's a Supreme Court case that says you don't allege mandamus jurisdiction when you have another statutory basis for jurisdiction. Let me ask you this. So the council, there's this multi-level process, administrative process you're required to go through. The council reversed another part of that process, the QIC decision, is that right? Yes, and the reason for that- Is that in the record? Is what the QIC decision was that was being reversed, is that in the record? Yes, absolutely. All right, so I can look in your brief and find out where it was. Yes, it's cited in the brief to the QIC decision. My follow on to that is, it seems to me that what we're talking about here is a disagreement about the amount of recoupment that happened. Is that not right? No, no, no, I think you're right. They gave you 1.8 million, you say you're entitled to more. There's an important distinction to be made on that point. The Secretary's going to try to say this is, and in fact they do say, unbelievably, that this is somehow a new claim by DNG. It's clearly not. Then you should just go back through. Well, they want to characterize it as a claim for additional Medicare payments so that I have to go back through because that would be an initial determination, which it's clearly not. There's no new claim here. The Secretary's duty to repay with interest is triggered by the statute and was triggered by the Medicare appeals decision reversing the underlying error. This is, forgive me if this is a dumb question, but I get to ask. No questions are dumb. Good answer. If we look back at this very large administrative record, will we find that the question of how much is recouped, was recouped from you? Was that, I mean, litigated? Was there a factual determination made of that? Are there facts in the record about that? The amount was not presented during that process. The QIC ruled that there was this overpayment, which was, it would take me an hour, but you would, it's based on an extrapolation and it's just a big, complicated record. $10,000 extrapolated to $8 million. Right, so the issue really that was being adjudicated, if you will, by the QIC was the legitimacy of that overpayment determination, period. The recoupments were sort of collateral, and in fact, the reason why the district court gave me initially an injunctive order was because it was a collateral issue, not really related to the issue on appeal. So the answer is no, you're not going to be able to go back and look at the QIC decision and say, well, the secretary determined how much was recouped, because that wasn't the issue. But the way I read what happened was you said, including a Fifth Amendment claim, you took whatever you took, call it X. Right. All of it is illegal, so give it all back. That's correct. So I mean, it seems like you've exhausted. There is a dispute as, it's an accounting dispute. I mean, we know what the number is. They say they know what the number is, but they're wrong, which is not surprising. So there's a balance too, but also the interest component that was never paid on anything. That's correct, Your Honor. All right. And I reserve my five minutes for both. Thank you, Your Honor. Ms. King. May it please the court. So this case does have a long and complicated administrative history. However, the issue before this court is straightforward, whether or not the district court had subject matter jurisdiction. Where should they, how should they have sued? Like, what would have been the appropriate jurisdictional basis to get their money back? Your Honor, the crux of this matter is we're not really sure. And I think the district court did the best that they could to try to figure this out. Because the confusing part of this case is that this case is not what it purports to be. So the plaintiff, if you look at their complaint, record number six, filed suit under 405G, and specifically 42 U.S.C. 1395FF, and basically saying that this is a review of a final agency decision. And clearly this is not, the plaintiff does not challenge any part of the decision by the Medicare Appeals Council, and the complaint was filed, and the allegation in the complaint was that the secretary was refusing to pay. But I understand that you might disagree with that, I'm sure the United States disagrees with it. But I'm confused from the position adopted in the red brief, and I'm hoping you can answer this question for me today. Suppose they're owed $9 million, the United States pays them $1.8 million, and everyone agrees that the recoupment was illegal. How is the appellant in this case supposed to get the 7.2 delta? What is the way to sue to get that? Well, possibly there could be a couple of options. And that's the confusing part of this, because the district court, and we're trying to figure that out here, when it is not in the complaint. So, for example, it's either a calculation error, or it's something else. Let's just assume, take my hypothetical, maybe if we don't want to use this case, just assume not D&G Holdings, a different company. It's undisputed that the $7.2 million is owed by the United States to the Medicare provider. The Medicare provider has exhausted under 405G for years. Every claim under the sun got all the way down, and the Medicare Appeals Council agrees with the provider. How does the provider go get the money? There has to be an answer. If you would agree with me, there has to be a way to get the 7.2. And under the facts that you've presented, if it was undisputed that that particular amount was owed, for example, from the final agency decision, then certainly, possibly mandamus. But we don't have that situation here, for a couple of reasons. Number one, even the plaintiff's expert, which they submitted in response to the government's motion to dismiss, said it's either this $4.3 million, and then if you add interest, $4.9 million, or it's $100,000, a little over $100,000, and if you add interest, $1.8 or $1.9 million. If you look at these claims that we see here that have a code on them that says forwarding balance, and so if those were recouped and are part of this recoupment, then it would be the $4.9 million with interest. We don't know. That is not before the court. And interestingly, you know, the plaintiff makes the argument that the government has not, has admitted that interest has not been paid. Well, the plaintiff has not shown that interest is owed, because specifically, they mentioned the statute that deals with, you know, the payment and payment with interest, but there's a specific regulation, 42 CFR 405.378J3, which specifically talks about the calculation of when you're repaying. And interest is only paid on the principal. So there is no information, because this was not brought before the administrative body, of what payments were recouped, what was the amount recouped, and whether or not any of the recoupment was attributable to the principal as opposed to interest. Well, can I pause you for a second? Because I, we clearly, clearly the United States believes that something is owed, because they paid $1.8 million. Correct. So where did that number come from? The secretary, and through the contractor, was responsible for calculating the amount of the recoupment and repaying that, which is what they did. And that was the affidavit that we attached to our motion to dismiss. And as a matter of fact, they said, you know, we paid a little over $2 million, and actually only $1.9 million was owed. And does that affidavit show the work, like how we calculated $1.8 million? No, it does not. Okay. It does not. So the number just kind of comes, is there anywhere in the record where we could find where $1.8 comes from? No, because it was not before the council. And that's the problem here. What was before the council? Tell me what was before the council. Before the council was the overpayment determination. Okay. That was the QIC's, well, I don't know. Correct. Right. There was a decision made by the QIC, and then the case was elevated past the administrative law judge to the Medicare Appeals Council, remanded back, and then elevated back to the council. But you would clearly agree that what was before the appeals council was, give me all the money that you have recouped. I mean, I have the sentence in here somewhere where the appeals council specifically addresses the Fifth Amendment claim that the appellant has raised in this case and says, appellant argues, quote, extensively, that every penny recouped was unlawful and violates the takings clause of the Fifth Amendment. So the government, the United States, the appeals council, Medicare, everyone, the secretary, everyone is on notice and has been extensively, according to the appeals council's own words, advised that their claim is give me every single penny that you recouped. That's the claim. Well, your honor, respectfully, it would have to be claims that were recouped pursuant to that overpayment. You know, so there are a lot of claims, especially when, you know, you have a provider that is billing millions of dollars to Medicare. There are a lot of claims, and some claims may be denied for some other reason. Some claims may have been recouped. And so, unfortunately for us, you know, we're here, the district court was trying to determine, what exactly do we have here? Because what we do know is that it was not, you know, the plaintiff is saying that this is not an initial determination. And unfortunately for the plaintiff, that is the path to judicial review under 405G. It's either an initial determination or it isn't. It is either reviewable or it isn't. And specifically, Congress, after the Illinois Council decision, which was in February of 2000, in December of 2000, Congress specifically changed 35FF. Prior to December of 2000, any determination was reviewable. Congress came back in December of 2000 and limited the review under 1395FF, only to initial determinations. So if we don't have an initial determination here, there is no jurisdiction. And- I thought you told me earlier mandamus would lie. Are you saying that now- Under 405G. Sorry. So is the position that you're advocating at this point in the argument, that after you get a determination that says we had no lawful basis to recoup one penny from you, that the remedy is you then have to go back to the beginning and exhaust what the number of pennies is? That would be an amazing whole thing. No, Your Honor, what I'm saying is we really don't know, because we don't know if this is a mathematical error or we don't know if the plaintiff is seeking payments for other claims. So this is- this has not been brought before the- and so we don't really know what we have. And you can see that by the district court's decision, because she says this appears to be most like or most akin to an initial determination. But even if it isn't, and this is what Illinois Council says, Illinois Council doesn't say that if you have a statutory or a constitutional challenge, that you don't have to funnel it through the administrative process. It says that the court can review those things. If they're challenged, they have to be brought with the underlying administrative claim. But if there are things that the secretary cannot review, then it can be subsequently reviewed by the district court. That is what Illinois Council held. And Illinois Council dealt with 1395 CC, which was the avenue for review for nursing homes, not 1395 FF and not 1395 FF in its current version, which was post-Illinois Council. When the government refunded the $1.8 million, was there any transmittal documentation explaining why the government was refunding that money? Not to my knowledge, Your Honor. I believe that they just received the check. I'm not aware of any transmittal document that laid out, if you're asking what was reimbursed or why, I'm not aware of that. Was there no documentation in the file of the person who sent the money, who refunded the money? I keep saying we don't know, we don't know. That seems absurd that the government is either taking too much money from someone and not knowing why or refunding money and not being in a position to explain it. That's totally inexcusable. Well, Your Honor, I go back to what is the basis for this case. And the plaintiff has alleged jurisdiction under 405G. And if you look at the plaintiff's complaint, the complaint is that the United States did not, or was refusing, or the Secretary, excuse me, was refusing to pay the recoupment. Now, certainly within the week that the plaintiff filed that lawsuit, they became aware that a payment had been made by the Secretary. And at no time did the plaintiff ever go back and amend their complaint to bring any of the allegations that we're talking about now. The complaint as it stands, and the complaint that the United States responded to, was that the recoupment had not been paid and that the Secretary was refusing to recoup. There has never been any amendment of the basic complaint that was filed. And the United States defended the suit that was filed. Did the district court have the option, I understand it dismissed for lack of jurisdiction under 405G, did it have the option to remand, if that makes any sense? And say, look, because the government doesn't know, yet there's been this payment, but we need the government to show its work. Could the district court have remanded somewhere? You can tell me where. Yes, Your Honor. 405. Could the district court have done that? I'm sorry. Could the district court have done that and said, we need to know more? 405G does provide for a remand. A remand can be done if the court determines that there is information missing, if there is new information that was not available at the time. And they can remand to have the council provide that lack of information, that missing information that was perhaps not available. Would that fit here? Possibly. You know, it's really hard to say. Because, again, we're not really sure what we're dealing with. We're not really sure if we're dealing with a miscalculation, or if the secretary's calculation was correct. Or, again, or if there is an issue with these other claims. I mean, I read the statute here. I don't know if you were thinking of this part. But in the middle of this very long statute, it says the court may on motion of the commissioner of Social Security be made for good cause, shown before the commissioner files the commissioner's answer, remand the case to the commissioner for further action by the commissioner. Right, that's another basis. Right. And that would seem to fit here, at least based on what we're talking about, when you say, well, we don't know. We need more evidence. That would seem to fit. I mean, what if this court remanded to the district court with instructions to remand to take further evidence? I mean, is that something you would oppose? Well, Your Honor, I can't say as I stand here whether or not the secretary would oppose that. But as I said, so there are three bases for the remand. One, as you mentioned, I think that's maybe line number four in that statute, that the secretary or the commissioner can seek remand before its answer. So we're past that. OK. OK. So then the other two is one, as I mentioned, for the lack of information, and number two, to fix a mistake. So it's possible that that could be done, and that may fit here. Interesting. But the bottom line is, based upon, as I said, this complaint, there is no jurisdiction. And it is incumbent upon the plaintiff to provide a basis for jurisdiction. The United States cannot be sued, save as it consents to be sued. And Congress specifically acted in December of 2000 by creating this process under 1395 FF as the road to jurisdiction under 405 G. So either it is an initial determination or it isn't. Either we're looking at the action. What is your view on that? What is your view on, the government's view on, is this an initial determination? Help me understand that. Right. Well, the view is that we are not sure what we have. Because it has not been pledged sufficiently, Your Honor. Well, I mean, in the abstract. I mean, the government obviously agrees that there is a, that money was recouped. You returned it. Right. And that we have paid the recoupment. Well, I know that's your view. Right. That's the government's view. The view of your friend on the other side is, no, I'm owed more money because you recouped more. That discrepancy, what Judge Oldham called the delta, is that an initial determination? Hard to see why it would be, but I'm open to your argument. And, Your Honor, I cannot say that it is an initial determination. It would be an amazing thing to say it's initial since he survived six years of litigating, getting the money back, got to the appeals council, and the appeals council says, you're right, and then the initial determination is the 1.8. So start over again if you don't like 1.8. But, as I said, Your Honor, that may not be an initial determination, but that is for the secretary to, I mean, the Congress has given the secretary of the authority to promulgate regulations as to what is an initial determination and what isn't. The secretary determined that the overpayment, the recoupment, I keep saying that, I'm sorry, the recoupment was unlawful. Finally, it's finally determined. That is a final agency action, no doubt about it, right? I would disagree slightly, Your Honor. I would say that what the council determined and what has become the final decision of the secretary is that there was insufficient records to support the overpayment amount and that they could not determine the overpayment amount. Not that the recoupment was unlawful. The 8 point, sorry. Correct. That they couldn't, they couldn't, the evidence did not support the calculation of that figure. They couldn't determine what the calculation would be for the overpayment based upon the record that was before the council. So the council did not, as the plaintiff alleges, determine that the recoupment was unlawful. That would not be accurate. We've talked a lot about the secretary and discretion and regulations and complicated statutes. I'm hoping you can give me a straightforward answer on this question. If there was a determination by the secretary that the overpayment was unlawful, I'm sorry, the recoupment was unlawful, and if there was evidence that the recoupment was $8 million, would the secretary have legal discretion not to pay the $8 million, repay the $8 million? If that was a decision. I'm sorry, if what was a decision? If the decision was, if you're saying if there was a final agency decision that there was a recoupment, which we don't have a decision here that says that, but if there was a final agency decision that a recoupment was unlawful and that recoupment was specifically $8 point whatever million dollars, then the secretary would be responsible for repaying that recoupment if there was a determination that the recoupment was a specific amount. So the secretary would have a nondiscretionary duty to return the money? I believe so. Thank you. When we're talking about recoupment, I know we've been saying that word a lot, what exactly does that mean within this administrative process? Right. So providers, as part of their bargain to be providers and to receive payments under Medicare, they agree that, I'm almost running out of time, they agree that the agency may go back and review those claims. And sometimes that's a program integrity issue because we're losing a lot of money for claims that are improperly paid. And so they agree that the secretary may go back and through contractors and review those claims and if claims are determined not to be payable, then the secretary has a duty to recoup those monies. And so that's what we're talking about. And so that's what was done in this case because it appeared to be that there were problems with the claims for mileage at a 200% overpayment for individual mileage claims. And so the secretary reviewed those, found those not to be payable, did an extrapolation, and then after a certain point in the regulations, they're entitled and actually required to start recoupment. And so that's what happened in this case. So recoupment is a separate process that then goes forward. Correct. That's why we can agree, I guess, that yes, there's a problem. Obviously, there's a problem. You gave them back $1.8 million. But we can also sort of be in the dark about how much was recouped from them. Because it wasn't presented in the administrative process. And again, Illinois Council doesn't say you get to bring these other claims if you think they're constitutionally challenged, which we don't have any briefing either in the district court or before this court of any constitutional challenge. You still have to funnel those through. But if the secretary is unable to adjudicate those, then Illinois Council says the district court can review those if they were not otherwise reviewable. That's what Illinois Council said. And the bottom line is, Your Honor, is that if the issue is not a miscalculation and the plaintiff is claiming these other benefits that were not otherwise payable, there has been no review of whether or not those claims were payable. And so that's why we're here. What are we talking about? Because of the way this was pled and what we have before us is not what the plaintiff purports it to be. And unfortunately, there was no jurisdiction for this complaint, which is why the court correctly dismissed it. Thank you for your argument. Thank you. Mr. Shepard. Mr. Shepard, why didn't you amend the complaint to credit the $1.8 million refund, which seems to be what Ms. King is complaining about, that she doesn't know, we don't know? Why didn't you clarify that? You hit the nail on the head. The government doesn't know how much they've recouped. We do. But I don't see a need to amend the complaint when... But if you're alleging an incorrect amount and you're not crediting the refund or the recoupment, whatever the magic word is... Of course the government gets a set-off for the $1.8 that they paid. I wouldn't claim otherwise, but we didn't get that far because the district court said that she didn't have jurisdiction. So I would have walked into court and said, Judge Foote, of course the government gets credit for the $1.8 they've already paid. We're not asking them to pay that again. There's no reason to go back and amend the complaint. The complaint is clear. It says, give us all of the money that you recouped. You haven't done that. Give us interest. You haven't done that. You allege an amount in the complaint? We do. Absolutely. And I... And it's just an allegation and you may have proof for all I know in the record. I absolutely do have proof, Your Honor, if I can get a hearing. One thing I want to emphasize is that this is not an initial determination that we're dealing with despite the Secretary's attempt to characterize this as a claim for new payments. 42 CFR Section 405-376J expressly says that when you're dealing with a decision on a recoupment, they call it a cessation or termination of a collection action, i.e. recoupment. That's not an initial determination subject to administrative appeal. So if I don't have jurisdiction, I cannot go back, which is what the government wants me to do. They want me to go back and repeat the five-year process on the issue of whether the government's paid me the right amount or not. And I agree that that's ridiculous. But I can't do that, even if you said that was the law, because the Secretary's own regulations say that I can't do that. It's not an initial determination subject to administrative appeal. In your view, could the district court, looking at this and maybe listening to the government, saying, we just don't know, you know, could the district court have remanded for the taking of additional evidence? I don't know. I'm glad you asked the question, Your Honor. I'm going to beg the court not to put it in its ruling that the court consider that option. And the reason is, as you well know, this case involved two escalations. Okay? So what the Secretary will do if the case is remanded is send it back for an ALJ hearing, which will take another four or five or six years, and then someday, maybe, my clients will get their day in court. So, yes, there's a mechanism for remand, but practically speaking, the system is broken. And if this, that's why I'm so thankful for Illinois Council and the Supreme Court having said that the district court has jurisdiction to develop its own record, because that's... There's no record to be developed in the district court. Correct. And that's what we want. We want the district court to address this issue. If you send it back to the Secretary, we'll be in another black hole for another six or seven years. And when I'm old and gray and ready to retire and most of you have been on the bench for another 25 years, I'll be back in front of you saying, please, don't send it back to the Secretary. So I want to foot stomp what Judge Clement asked, and that is, when we got the $1.8 million payment, there was no accounting. There was... Typically, when you get a payment from Medicare, you get an explanation of benefits that says what beneficiary is being reimbursed for and the whole... It's a big spreadsheet. We didn't get that. We got a check. Here's a check. Have a nice day. No accounting of this is all we owe you. No transmittal letter. It showed up by electronic funds transfer. We didn't even know we had been paid until several days later. I filed the complaint. I didn't know that the payment was made until the following week. And they said, oh, well, we got this money and we don't know what it's for. Remind me what the district court's sort of reaction was to the payment being made. Well, unfortunately, the district court didn't give me a hearing, so I couldn't actually talk to the district court. I could only file briefs. But I would have been happy to explain these facts to the district court had she given me the opportunity to do so. But in my last 28 seconds, I want to address one additional thing that kind of struck me as odd in that the government, with respect to interest, the recoupments occurred, if you look at the record, over the period of three to four years. Interest is owed. Millions of dollars were taken from my client. So the idea that we haven't pled interest is ridiculous. The statute itself demands interest. You have those record citations in your brief about that show when the recoupments occurred? Yes, Your Honor. Thank you. My time is up. Thank you all for your attention. Case is submitted.